UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

_____

№ 11-CV-3754 (JFB)(GRB)
_____

WILLIAM O'LEARY,

Plaintiff,

VERSUS

TOWN OF HUNTINGTON, ET AL.,

Defendants.
_____

**MEMORANDUM AND ORDER**
September 5, 2012
_____

JOSEPH F. BIANCO, District Judge:

William O'Leary ("O'Leary" or "plaintiff") filed this action against the Town of Huntington ("the Town"), the Town of Huntington Highway Department, William Naugton, Frank P. Petrone, Mark Cuthbertson, Susan A. Berland, Mark Mayoka, and Glenda Jackson on August 3, 2011. On December 8, 2011, plaintiff filed an amended complaint alleging that defendants: (1) violated the Americans with Disabilities Act of 1990 ("ADA"), 42 U.S.C. §§ 12112-12117; (2) deprived him of his constitutional rights pursuant to "29 U.S.C. §§ 1983 and 1988" (presumably 42 U.S.C. §§ 1983 and 1988); (3) violated plaintiff's First, Fifth, and Fourteenth Amendment rights; (4) violated the New York State Human Rights Law § 290 *et seq.*; (5) violated 42 U.S.C. § 1981a; (6) violated the New York State Constitution; and (7) violated the New York State Civil Service Law § 71.[1] With respect to plaintiff's federal constitutional claims, plaintiff asserts that defendants violated his First Amendment

---

[1] Plaintiff's amended complaint did not include the Town of Huntington Highway Department in the caption, but the complaint still asserted claims against the Highway Department. It is well-settled that claims against administrative arms of the same municipality lack the capacity to be sued. *See Caidor v. M&T Bank*, No. 5:05-CV-297, 2006 U.S. Dist. LEXIS 22980, at *6-7, (N.D.N.Y. Mar. 27, 2006) ("'Under New York law, departments which are merely administrative arms of a municipality, do not have a legal identity separate and apart from the municipality and cannot be sued.'" (quoting *Hill v. City of White Plains*, 185 F. Supp. 2d 293, 303 (S.D.N.Y. 2002)). Accordingly, all claims against the Town of Huntington Highway Department are dismissed with prejudice.

right to free speech, association, and to petition the government, his Fifth and Fourteenth Amendment rights to due process, and his Fourteenth Amendment right to equal protection under the law. Specifically, plaintiff alleges that defendants discriminated against him by terminating him after he had taken disability leave. Plaintiff seeks a declaratory judgment that the Town's employment practices are unconstitutional, reinstatement with backpay, front pay, compensatory and punitive damages, an injunction against violating applicable laws and retaliating against plaintiff, and attorney's fees.

Defendants move to dismiss the complaint, pursuant to Rules 12(b)(1) and 12(b)(6) of the Federal Rules of Civil Procedure, on the following grounds: (1) plaintiff's ADA claims are untimely; (2) Sections 1983 and 1988 do not create substantive rights; (3) plaintiff's First Amendment claim fails as a matter of law; (4) plaintiff's due process claims are contrary to well-settled law; (5) plaintiff's equal protection claim is barred as a matter of law; (6) plaintiff's constitutional claims fail as against the individual defendants because plaintiff has not alleged personal involvement; (7) the individual defendants are entitled to qualified immunity; (8) plaintiff's claims under the New York Human Rights Law are barred due to plaintiff's election of remedies; (8) Section 1981a does not create an independent cause of action; (9) plaintiff's claims under the New York State Constitution must be dismissed; and (10) plaintiff is barred from pursuing a claim under Section 81 of the Civil Service Law.

As discussed below, defendants' motion to dismiss plaintiff's federal claims is granted.[2] The Court declines to exercise supplemental jurisdiction over plaintiff's state law claims, and thus, these claims are dismissed without prejudice.

I. BACKGROUND

A. Factual Background

The following facts are taken from the amended complaint filed on December 8, 2011 ("Am. Compl."), and are not findings of fact by the Court. Instead, the Court will assume the facts in the amended complaint to be true and, for purposes of the pending motion to dismiss, will construe them in a light most favorable to plaintiff, the non-moving party.

Plaintiff was employed as a Laborer/Driver by the Town and its Highway Department from April 2, 2002 until October 29, 2008. (Am. Compl. ¶ 18.) At all relevant times, plaintiff was qualified for his position. (*Id.*) During his employment, plaintiff suffered three or more on-the-job injuries in 2004, 2006 and 2007. (*Id.* ¶ 20.) After the first two injuries, plaintiff returned to work and resumed his duties. (*Id.* ¶ 21.)

On or about October 19, 2007, plaintiff suffered a dislocation of his shoulder and rotator cuff tear due to an on-the-job injury. (*Id.* ¶ 22.) The injury necessitated his absence from work. (*Id.* ¶ 23.) Plaintiff also suffers from coronary heart disease and had a blockage in his artery necessitating that stents be surgically placed in his chest. (*Id.* ¶ 24.) Plaintiff's disabilities are chronic,

---

[2] To the extent that plaintiff also seeks a declaratory judgment that defendants' actions were unconstitutional or in violation of federal law, that claim cannot survive the motion to dismiss for the same reasons that the motion to dismiss is granted as to the underlying constitutional claims.

2

permanent, and constitute medical impairments which substantially affect and limit him in one or more major life activities, including not being able to lift more than twenty-five pounds continuously. (*Id.* ¶ 25.) Plaintiff's disabilities and impairments substantially limit or restrict him from performing some jobs. (*Id.* ¶ 27.)

Notwithstanding his disabilities and impairments, plaintiff made efforts to recover and rehabilitate himself in an effort to return to work as quickly as possible. (*Id.* ¶ 34.) On June 23, 2008, August 4, 2008, and March 29, 2011, plaintiff submitted medical documentation certifying that plaintiff was fit to return to work with a reasonable accommodation that he not lift more than twenty-five pounds continuously. (*Id.*) Each time plaintiff submitted the medical documentation, he requested that he be permitted to return to work. (*Id.* ¶ 36.) Each request was ignored or denied by defendants. (*Id.* ¶ 37.)

Following the onset of his injuries, plaintiff was advised to obtain certification as a security guard; after plaintiff obtained this certification, he advised the Town that he would be flexible with his pay grade in order to pursue a security position. (*Id.* ¶ 42; Am. Compl. Ex. 4, Letter Dated April 2, 2008.) Plaintiff also expressed to agents for the Town that he was willing to work anywhere in the Town where a vacancy existed. (Am. Compl. ¶ 43.)

On September 11, 2008, plaintiff underwent and passed a stress test at defendants' request. (*Id.* ¶ 38.) On October 2, 2008, plaintiff informed a member of the Town Personnel Office that he was ready to return to work with a reasonable accommodation. (*Id.* ¶ 39.) Following that conversation, Lisa Baisley informed plaintiff that he needed to see a Town doctor on October 8, 2008 about the stents placed in his chest. (*Id.* ¶ 40.) Plaintiff scheduled an appointment, but Baisley contacted him prior to the appointment to inform him that the appointment was cancelled. (*Id.*) Baisley informed plaintiff that he could not return to work; the only reason given was that plaintiff could not shovel asphalt. (*Id.* ¶¶ 40-41.)

On October 14, 2008, plaintiff delivered a letter requesting a reasonable accommodation and requesting to return to work as soon as possible. (*Id.* ¶ 52.) In that letter, drafted by plaintiff's counsel, plaintiff's counsel noted that there was a "well-established past practice by the Town where employees who have disabilities or impairments have been permitted to work with reasonable accommodation." (Am. Compl. Ex. 6, Letter Dated October 14, 2008.) The letter detailed the Town's past practice of allowing employees with disabilities to work with a reasonable accommodation. (Am. Compl. ¶ 53.) The letter threatened legal action against defendants. (*Id.* ¶ 64.)

On October 15, 2008, plaintiff reported to work at his usual start time. (*Id.* ¶ 59.) Plaintiff was not permitted to work and was told to leave. (*Id.*) Plaintiff inquired if he could return the next day, and plaintiff was advised that he could not come back at all. (*Id.*)

The Town informed defendant, by letter dated October 29, 2008, that if plaintiff was unable to return to work by the expiration of his one-year leave of absence, the Town would terminate his employment as of that date. (*Id.* ¶ 57.) The letter stated that plaintiff was on a one-year leave of absence and, because he was absent for more than one year since his October 19, 2007 injury, he would be terminated from employment.

3

(*Id.* ¶ 56.) The letter stated that plaintiff was being terminated pursuant to New York State Civil Service Law § 71 and Article 18 of the collective bargaining agreement between the Town and the "Local 342." (*Id.* ¶ 56.)

Plaintiff filed a complaint with the New York State Division of Human Rights ("DHR") on October 7, 2009. (*Id.* ¶ 14.) The Equal Employment Opportunity Commission issued to plaintiff a Notice of Right to Sue which plaintiff received on or about May 10, 2011. (*Id.* ¶ 15.)

B. Procedural Background

Plaintiff filed the complaint in this action on August 3, 2011. Plaintiff filed the amended complaint on December 8, 2011. Defendant filed a motion to dismiss on February 3, 2012. Plaintiff filed his opposition to the motion to dismiss on April 3, 2012. Defendant filed a reply to plaintiff's opposition on April 23, 2012. Oral argument was held on July 13, 2012. The Court has fully considered the arguments and submissions of the parties.

II. STANDARD OF REVIEW[3]

In reviewing a motion to dismiss pursuant to Rule 12(b)(6), the Court must accept the factual allegations set forth in the complaint as true and draw all reasonable inferences in favor of the plaintiff. *See Cleveland v. Caplaw Enters.*, 448 F.3d 518, 521 (2d Cir. 2006); *Nechis v. Oxford Health Plans, Inc.*, 421 F.3d 96, 100 (2d Cir. 2005).

"In order to survive a motion to dismiss under Rule 12(b)(6), a complaint must allege a plausible set of facts sufficient 'to raise a right to relief above the speculative level.'" *Operating Local 649 Annuity Trust Fund v. Smith Barney Fund Mgmt. LLC*, 595 F.3d 86, 91 (2d Cir. 2010) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007)). This standard does not require "heightened fact pleading of specifics, but only enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570, 127 S.Ct. 1955.

The Supreme Court clarified the appropriate pleading standard in *Ashcroft v. Iqbal*, setting forth a two-pronged approach for courts deciding a motion to dismiss. 556 U.S. 662, 129 S. Ct. 1937 (2009). The Court instructed district courts to first "identify[ ] pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth." 129 S.Ct. at 1950. Though "legal conclusions can provide the framework of a complaint, they must be supported by factual allegations." *Id*. Second, if a complaint contains "well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Id*.

The Court notes that in adjudicating a Rule 12(b)(6) motion, it is entitled to consider: "(1) facts alleged in the complaint and documents attached to it or incorporated in it by reference, (2) documents 'integral' to the complaint and relied upon in it, even if not attached or incorporated by reference, (3) documents or information contained in defendant's motion papers if plaintiff has knowledge or possession of the material and relied on it in framing the complaint, (4) public disclosure documents required by law

---

[3] Defendants state that they are moving to dismiss pursuant to Rule 12(b)(1) in addition to Rule 12(b)(6). It is unclear from defendants' brief, however, which claims defendants move to dismiss under a Rule 12(b)(1) standard. The Court evaluates all of defendants' arguments under a Rule 12(b)(6) standard.

4

to be, and that have been, filed with the Securities and Exchange Commission, and (5) facts of which judicial notice may properly be taken under Rule 201 of the Federal Rules of Evidence." *In re Merrill Lynch & Co.*, 273 F. Supp. 2d 351, 356-57 (S.D.N.Y. 2003) (internal citations omitted), *aff'd in part and reversed in part on other grounds sub nom., Lentell v. Merrill Lynch & Co.*, 396 F.3d 161 (2d Cir. 2005), *cert. denied*, 546 U.S. 935 (2005); *see also Cortec Indus., Inc. v. Sum Holding L.P.*, 949 F.2d 42, 48 (2d Cir. 1991) ("[T]he district court . . . could have viewed [the documents] on the motion to dismiss because there was undisputed notice to plaintiffs of their contents and they were integral to plaintiffs' claim."); *Brodeur v. City of New York*, No. 04 Civ. 1859 (JG), 2005 U.S. Dist. LEXIS 10865, at *9-10 (E.D.N.Y. May 13, 2005) (court could consider documents within the public domain on a Rule 12(b)(6) motion to dismiss).

III. DISCUSSION

A. Plaintiff's ADA Claims

Plaintiff has asserted that he was terminated in violation of the anti-discrimination and anti-retaliation provisions of the ADA. For the reasons set forth below, plaintiff's ADA claims must be dismissed. Defendants argue that plaintiff did not file a timely charge of discrimination. The Court agrees that the charge was not timely filed, and finds that there is no basis for equitable tolling or the application of the "continuing violation" exception.

1. Applicable Law

Under 42 U.S.C. § 2000e-5, which is incorporated by reference into the ADA by 42 U.S.C. § 12117(a), a plaintiff in New York has 300 days from the date of accrual to file an ADA charge with the EEOC. *See Harris v. City of New York*, 186 F.3d 243, 247-48 (2d Cir. 1999). A claim under the ADA accrues when the plaintiff "knew or had reason to know of the injury serving as the basis for his claim." *Id.* at 247.

"Termination, failure to promote, and refusal to hire are considered 'discrete acts' which are 'easy to identify' and claims based on each are barred if not timely filed." *Valtchev v. City of New York*, 400 F. App'x 586, 588, (2d Cir. 2010) (quoting *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 114 (2002)). There is an exception, however, for discriminatory acts that are "part of a continuing policy and practice of prohibited discrimination." *Id.* Under this "continuing violation" exception to the limitations period, if a plaintiff "files an EEOC charge that is timely as to any incident of discrimination in furtherance of an ongoing policy of discrimination, all claims of acts of discrimination under that policy will be timely even if they would be untimely standing alone." *Lambert v. Genesee Hosp.*, 10 F.3d 46, 53 (2d Cir. 1993), *abrogated on other grounds by Kasten v. Saint-Gobain Performance Plastics Corp.*, 131 S. Ct. 1325 (2011). The continuing violation exception applies "to cases involving specific discriminatory policies or mechanisms," but does not apply to "multiple incidents of discrimination, even similar ones, that are not the result of a discriminatory policy or mechanism." *Id.*

"When determining whether equitable tolling is applicable, a district court must consider whether the person seeking application of the equitable tolling doctrine (1) has 'acted with reasonable diligence during the time period she seeks to have tolled,' and (2) has 'proved that the

circumstances are so extraordinary that the doctrine should apply.'" *Zerilli-Edelglass v. N.Y. City Transit Auth.*, 333 F.3d 74, 80-81 (2d Cir. 2003) (quoting *Chapman v. ChoiceCare Long Island Term Disability Plan*, 288 F.3d 506, 512 (2d Cir. 2002)); *see also South v. Saab Cars USA, Inc.*, 28 F.3d 9, 12 (2d Cir. 1994) (noting that the principles of equitable tolling do not extend to what "is at best a garden variety claim of excusable neglect" (citation and quotation marks omitted)). The "burden of demonstrating the appropriateness of equitable tolling . . . lies with the plaintiff." *Boos v. Runyon*, 201 F.3d 178, 185 (2d Cir. 2000); *see also Smith v. Chase Manhattan Bank*, No. 97 Civ. 4507 (LMM), 1998 U.S. Dist. LEXIS 14711, at *10 (S.D.N.Y. Sept. 18, 1998) ("[A] court must consider the equities of the excuse offered to explain the delay and may extend the limitations period if warranted.").

With respect to equitable tolling, courts have held that only in a limited number of cases do extraordinary circumstances exist. Such cases include where the plaintiff has a mental or physical disability. *See, e.g.*, *Tsai v. Rockefeller Univ.*, 137 F. Supp. 2d 276, 281-83 (S.D.N.Y. 2001); *Lloret v. Lockwood Greene Eng'rs, Inc.*, No. 97 Civ. 5750(SS), 1998 WL 142326, at *2-4 (S.D.N.Y. Mar. 27, 1998). Other such cases involve instances where the plaintiff has been misled by a state agency or the EEOC. *See Lugo-Young v. Courier Network, Inc.*, No. 10-CV-3197(RRM)LB), 2012 WL 847381, at *7 (E.D.N.Y. Mar. 13, 2012) ("It is true that the EEOC's conduct can, in some circumstances, justify equitable tolling." (collecting cases)). In addition, "equitable tolling is generally considered appropriate[, for example when there has been] misleading conduct by the defendant." *Zerilli-Edelglass*, 333 F.3d at 80.

However, in many other situations involving some purported hardship or explanation for the delay, courts have held that extraordinary circumstances did not exist. *See, e.g.*, *Ferrer v. Potter*, No. 03 Civ. 9113(AJP), 2005 WL 1022439, at *8 (S.D.N.Y. May 3, 2005) (holding father's death insufficient reason for equitable tolling); *Jenkins v. Potter*, 271 F. Supp. 2d 557, 564 (S.D.N.Y. 2003) (holding union representative's "wife's terminal illness" not sufficiently "extraordinary" circumstance to justify equitable tolling); *Chalom v. Perkins*, No. 97 Civ. 9505(LAP), 1998 WL 851610, at *6 (S.D.N.Y. Dec. 9, 1998) ("Even if [plaintiff] did offer proof of the mental grief she alludes to, it would not reach the high standard that this circuit has applied." (citing cases)); *Brundin v. United States*, No. 95 Civ. 2689(WK), 1996 WL 22370, at *5 (S.D.N.Y. Jan. 19, 1996) ("Although the plaintiff does supply an excuse for the delay – the unexpected death of her father – this reason alone does not warrant equitable tolling.").

2. Application

As the amended complaint makes clear, plaintiff was notified of his termination on October 29, 2008. The amended complaint also makes clear that plaintiff did not file his charge of discrimination with the DHR until October 7, 2009. Even assuming the termination letter was mailed to plaintiff and plaintiff did not learn of the termination until November 2, 2008, as plaintiff argues (Pl.'s Opp. at 3), the charge remains untimely. Moreover, as discussed below, there is no basis for equitable tolling or for the application of the continuing violation doctrine.

a. Equitable Tolling

Plaintiff acknowledges that the charge was not timely filed, but argues that the delay is *de minimus*. (*Id.* ("Thus, O'Leary was late by approximately one month for purposes of the [EEOC] filing period with regard to termination. However, the one month gap is de minimus at best.").) As noted *supra*, the standard is not whether the delay is *de minimus*, but rather whether plaintiff acted with reasonable diligence and proven that his circumstances were so extraordinary that equitable tolling should apply. Plaintiff has failed to do so.

At oral argument, plaintiff's counsel argued that plaintiff is entitled to equitable tolling because plaintiff was a lay-person and was optimistic that he would be re-hired. These circumstances are not "so extraordinary" as to warrant equitable tolling.[4] In addition, plaintiff argued in his opposition brief and at oral argument that defendants engaged in misleading conduct by asking him to take a stress test, which plaintiff took to mean that defendants would re-hire him. (Pl.'s Opp at 3-4.) This alleged conduct took place *before* the termination, and does not satisfy plaintiff's burden of establishing equitable tolling. As the Second Circuit explained,

> [the statutory time periods for filing] commence upon the employer's commission of the discriminatory act and are not tolled or delayed pending the employee's realization that the conduct was discriminatory unless the employee was actively misled by his employer, he was prevented in some way from exercising his rights . . . . An "extraordinary" circumstance permitting tolling of the time bar on equitable grounds might exist if the employee could show that it would have been impossible for a reasonably prudent person to learn that his discharge was discriminatory.

*Miller v. Int'l Tel. & Tel. Corp.*, 755 F.2d 20, 24 (2d Cir. 1985) (citations omitted). A request to take a stress test, prior to the clear and unambiguous termination of plaintiff, is not an "extraordinary" circumstance demonstrating that it would be impossible for a reasonably prudent person to learn that plaintiff's termination was discriminatory. This is especially true where plaintiff's counsel sent a letter after the stress test request explicitly stating that

> [n]otwithstanding several requests by Mr. O'Leary to return to work, you have directed that he not return to work. As you are probably aware, Federal, State, and Local Law impose an affirmative obligation on employers to reasonably accommodate employees with disabilities or medical impairments. Having placed the Town on notice of his disabilities and impairments and that he was fully capable of returning to work with reasonable accommodation, your refusal to permit Mr. O'Leary to return to work constitutes a violation of law. Notwithstanding several ignored [sic]. The Town's refusal and/or failure to reasonably accommodate

---

[4] The Court also notes that plaintiff was represented by counsel prior to his termination as evidenced by the letter dated October 14, 2008 (Am. Compl. Ex. 6, Letter Dated October 14, 2008), and counsel filed plaintiff's notice of claim with the Town on January 27, 2009 (Am. Compl. Ex. 2, Notice of Claim). Plaintiff was not merely a lay-person during the relevant time period, but had availed himself to legal counsel.

7

> Mr. O'Leary's impairments similarly violate law.

(Am. Compl. Ex. 6, Letter Dated October 14, 2008.) Not only was it possible for a reasonably prudent person to learn that the termination was discriminatory, plaintiff himself was actually aware after the stress test request that the Town's actions (according to plaintiff) may violate applicable laws. As such, equitable tolling is unwarranted under the circumstances of this case.

### b. Continuing Violation

Plaintiff also argues that defendants engaged in ongoing discriminatory policies or practices that warrant the continuing violation exception. Plaintiff argues that defendants ignored plaintiff's attempts to return to work on June 23, 2008, August 8, 2008, and October 15, 2008, and that this "pattern" continued on March 29, 2011, November 14, 2011, December 7, 2011 and December 12, 2011 when plaintiff submitted information to the Town certifying that he could return to work with a reasonable accommodation. (Pl.'s Opp. at 6.)

The denial of additional requests for a reasonable accommodation, nearly two and one-half years after an employee's termination, does not constitute "an ongoing policy of discrimination." *Lambert*, 10 F.3d at 53; *cf. Elmenayer v. ABF Freight Sys., Inc.*, 318 F.3d 130, 135 (2d Cir. 2003) ("The rejection of a proposed accommodation is a single completed action when taken, quite unlike the 'series of separate acts' that constitute a hostile work environment and 'collectively constitute' an unlawful employment practice." (quoting *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 122 S.Ct. 2061, 2074, 153 L.E.2d 106 (2002)). Mere requests to reconsider cannot extend limitations periods applicable to the ADA. *See, e.g.*, *Whalen v. CSC TKR, LLC*, No. 11 CV 1834(VB), 2011 WL 6965740, at *4 (S.D.N.Y. Dec. 28, 2011) (quoting *Del. State Coll. v. Ricks*, 449 U.S. 250, 261 n.15, 101 S.Ct. 498, 66L.E.2d 431 (1980)); *see also Saidin v. N.Y.C. Dep't of Educ.*, 498 F. Supp. 2d 683, 688 (S.D.N.Y. 2007) ("[plaintiff's request for a copy of the denial of his appeal relating to his teaching license, the response to which plaintiff claimed was a failure to hire] is insufficient to constitute a viable new claim of unlawful discrimination, or to revive claims already barred, even if it were construed as a request for reconsideration.").

This is especially true where, as here, the employee has clearly and unequivocally been denied any previous requests for a reasonable accommodation and terminated from his position. Just as an employee who continues working after the denial of a reasonable accommodation may not claim a continuing violation, an ex-employee who is not re-hired also may not claim a continuing violation. *See generally Durham v. Atlantic City Elec. Co.*, No. 08-1120(RBK/AMD), 2010 WL 3906673, at *8 (D.N.J. Sept. 28, 2010) ("Moreover, plaintiff cannot successfully argue that a denial of his requested accommodation coupled with his continued employment constitutes a continuing violation. Such a result would nullify the statute of limitations in all failure-to-accommodate claims where the employer denies an employee's accommodation request and the employee remains with the company."); *Whalen*, 2011 WL 6965740, at *4 (repeated denials of requests for a reasonable accommodation do not constitute a continuing violation).

As a matter of public policy, it would eviscerate the statute of limitations in

8

failure-to-accommodate claims if courts allowed a terminated employee to resurrect untimely claims by simply renewing requests for an accommodation that were made prior to the employee's termination. At oral argument, plaintiff's counsel could cite no case that would allow the resurrection of untimely claims in this manner.

In any event, plaintiff has not filed a charge of discrimination with the EEOC regarding any of the 2011 events, and thus has not filed "an EEOC charge that is timely as to any incident of discrimination in furtherance of an ongoing policy of discrimination" which is required for a continuing violation. *Lambert*, 10 F.3d at 53.

\* \* \*

In sum, plaintiff's ADA claims are time-barred. Plaintiff has not demonstrated that equitable tolling or the continuing violation exception applies. As such, the Court dismisses plaintiff's claims pursuant to the ADA.[5]

### B. Plaintiff's Section 1983 Claims

Plaintiff brings a claim pursuant to "29 U.S.C. §§ 1983 and 1988," presumably 42 U.S.C. §§ 1983 and 1988. As an initial matter, these statutes do not create substantive rights. *Sykes v. James*, 13 F.3d 515, 519 (2d Cir. 1993); *Rose v. Barrett*, No. 10-CV-4592(NGG)(ALC), 2010 WL 4879011, at *2-3 (E.D.N.Y. Nov. 23, 2010). The Court interprets, however, plaintiff's complaint to assert violations of his First, Fifth, and Fourteenth Amendment rights pursuant to 42 U.S.C. § 1983.

To prevail on a claim under Section 1983, a plaintiff must show: (1) the deprivation of any rights, privileges, or immunities secured by the Constitution and its laws; (2) by a person acting under the color of state law. 42 U.S.C. § 1983. As noted above, "Section 1983 itself creates no substantive rights; it provides only a procedure for redress for the deprivation of rights established elsewhere." *Sykes*, 13 F.3d at 519.

There is no dispute for purposes of this motion that defendants were acting under color of state law. The question presented, therefore, is whether as pled in plaintiff's complaint, defendants' alleged conduct deprived plaintiff of his constitutional rights.

### 1. Plaintiff's First Amendment Claim

Plaintiff alleges that he was retaliated against for speaking out against a policy custom, or practice "whereby individuals who are disabled will be terminated without due consideration of their right to reasonable accommodation." (Am. Compl. ¶¶ 125-26, 129.) As set forth below, it is abundantly clear from the allegations in the amended complaint that plaintiff's speech related to a personal grievance, not a matter of public concern, and therefore plaintiff's First Amendment claim must be dismissed as a matter of law.

---

[5] The Court notes that plaintiff has asserted a claim pursuant to 42 U.S.C. § 1981a. "This statute does not create a new substantive right or an independent cause of action; rather it 'enhances the remedies otherwise available for intentional employment discrimination.'" *Bowen v. Niagara Mohawk Power Corp.*, No. 02-CV-749, 2006 WL 3096487, at *8 (N.D.N.Y. Oct. 20, 2006) (quoting *Perry v. Dallas Ind. Sch. Dist.*, No. CIV. A. 3:96-CV-2855, 1998 WL 614668, at *1 n.1 (N.D. Tex. Sept. 2, 2012)). Thus, any purported claim pursuant to 42 U.S.C. § 1981a is dismissed with prejudice.

9

a. Applicable Law

The Second Circuit has "described the elements of a First Amendment retaliation claim in several ways, depending on the factual context." *Williams v. Town of Greenburgh*, 535 F.3d 71, 76 (2d Cir. 2008). Where, as here, a public employee brings a retaliation claim based on the First Amendment, a plaintiff must put forth evidence that demonstrates the following in order to establish a *prima facie* case: "(1) [he] engaged in constitutionally protected speech because [he] spoke as [a] citizen[] on a matter of public concern; (2) [he] suffered an adverse employment action; and (3) the speech was a motivating factor in the adverse employment decision." *Skehan v. Village of Mamaroneck*, 465 F.3d 96, 106 (2d Cir. 2006) (internal quotation marks and citations omitted), *overruled on other grounds by Appel v. Spiridon*, 531 F.3d 138, 140 (2d Cir. 2008).

With respect to the first element's requirement that the speech relate to a matter of public concern, the Second Circuit has explained, "when a public employee 'speaks not as a citizen upon matters of public concern, but instead as an employee of matters only of personal interest,' courts should not 'review the wisdom of a personnel decision taken' in response." *Nagle v. Marron*, 663 F.3d 100, 106 (2d Cir. 2011) (quoting *Connick v. Myers*, 461 U.S. 138, 147 (1983)). "To determine '[w]hether an employee's speech addresses a matter of public concern,' courts look to 'the content, form, and context of a given statement, as revealed by the whole record.'" *Id.* (quoting *Connick*, 461 U.S. at 147-48). The Second Circuit has stated that "[s]peech on a purely private matter, such as an employee's dissatisfaction with the conditions of his employment, does not pertain to a matter of public concern." *Sousa v. Rogue*, 578 F.3d 164, 173 (2d Cir. 2009) (quoting *Reuland v. Hynes*, 460 F.3d 409, 417 (2d Cir. 2006)). "[A] speaker's motive is not dispositive in determining whether his or her speech addresses a matter of public concern." *Id.* "Whether association or speech is on a matter of public concern is a fact-intensive inquiry; nevertheless it is a question of law for the court to decide." *Wrobel v. County of Erie*, ---F.3d ----, No. 10-5179-CV, 2012 WL 3104529, at *4 (2d Cir. Aug. 1, 2012).

b. Analysis

At oral argument, plaintiff's counsel confirmed that the two instances of speech or conduct that he asserts caused his termination are (1) his action in showing up to work and being turned away, and (2) his counsel's letter dated October 14, 2008 ("the October 14 letter"), which is attached to the amended complaint.[6] As set forth below, it is abundantly clear, taking the allegations in the amended complaint as true, that these two instances do not constitute matters of public concern as a matter of law.

---

[6] Although plaintiff's complaint stated in a conclusory fashion that "[p]laintiff's statements, complaints, and petitions involved matters of public concern" (Am. Compl. ¶ 131), plaintiff's counsel clarified at oral argument that this First Amendment claim was limited to only the two above-referenced instances which are specifically mentioned in the amended complaint. In any event, to the extent that the complaint sought to rely upon Paragraphs 131 and 132 to point to some other unidentified, additional speech involving a matter of public concern, the allegations are wholly conclusory and do not withstand defendants' motion to dismiss for failure to state a claim. *See Velez v. Levy*, 401 F.3d 75, 97 (2d Cir. 2005) ("[I]n assessing a motion to dismiss in this context, we must be satisfied that such a claim is 'supported by specific and detailed factual allegations' which are not stated 'in wholly conclusory terms.'" (quoting *Flaherty v. Coughlin*, 713 F.2d 10, 13 (2d Cir. 1983)).

10

As a threshold matter, the Court is aware of no case, and plaintiff's counsel has not provided any case, that has found that an employee's showing up to work in this context is conduct protected by the First Amendment. In any event, it is clear from the amended complaint and the October 14 letter that plaintiff's conduct and speech was "personal in nature and generally related to [his] own situation." *Huth v. Haslun*, 598 F.3d 70, 75 (2d Cir. 2010) (quoting *Saulpaugh v. Monroe Cmty. Hosp.*, 4 F.3d 134, 143 (2d Cir. 1993)).

In attempting to return to work prior to the one-year anniversary of his injury, plaintiff was attempting to secure his employment with a reasonable accommodation. This act is purely personal in nature. To the extent plaintiff argued that plaintiff's action could be seen by others as an attempt to stand up to unlawful discrimination generally, this does not render the plaintiff's conduct a matter of public concern. In any First Amendment case dealing with complaints of discriminatory treatment, other employees could possibly view a plaintiff's personal complaints to challenge a larger evil. Plaintiff has cited no case, nor is the Court aware of any case, where personal complaints are transformed into matters of public concern merely because others may view the speech or conduct more generally.

Though plaintiff's counsel attempts to argue that the October 14 letter dealt with a discriminatory custom and practice constituting a matter of public concern, the October 14 letter actually states the exact opposite. The letter states that "[m]ost significantly, there is a well-established past practice by the Town where employees who have disabilities or impairments have been permitted to work with reasonable accommodation." (Am. Compl. Ex. 6, Letter Dated October 14, 2008.) The letter details an instance where a disabled Town employee had been given a reasonable accommodation and requests that plaintiff be treated in a similar manner. (*Id.*) Thus, the October 14 letter actually states that the Town had a non-discriminatory policy, but that plaintiff was not being treated in accordance with the policy. The letter is entirely focused on plaintiff's injuries, his desire to return to work, and his potential damages due to the alleged misconduct. Plaintiff's speech in the October 14 letter is personal in nature and generally related to his own situation; it is not a matter of public concern.

The Court's determination on this issue is consistent with numerous decisions by other courts that have concluded, under analogous circumstances, that this type of complaint by an employee is not protected by the First Amendment. *See, e.g.*, *Carter v. City of Syracuse Sch. Dist.*, No. 5:10-CV-690(FJS/TWD), 2012 WL 930798, at *14 (N.D.N.Y. Mar. 19, 2012) (where employee had complained of racial discrimination in an administrative complaint, employee's complaint "sought to address her own personal grievance with Defendants regarding their allegedly racially discriminatory conduct against her, rather than a matter of public concern"); *Haiyan v. Hamden Public Schs.*, No. 3:10-cv-767 (VLB), 2011 WL 2899089, at *7-8 (D. Conn. July 15, 2011) (plaintiff's complaints that she was not paid as much as similarly situated teachers and her retention of an attorney to represent her in that regard were personal grievances that did not involve matters of public concern); *Loris v. Moore*, No. 3:04-cv-1036(WWE), 2008 WL 3891730, at *8 (D. Conn. Aug. 20, 2008) ("an employee's filing of a grievance

relative to a personal employment dispute is not of public concern").

In fact, other courts, in cases involving similar employee complaints of disability discrimination in connection with their job, have held that the speech related to a personal grievance, rather than a matter of public concern. For example, in *Holbrook v. City of Alpharetta, Georgia*, 112 F.3d 1522 (11th Cir. 1997), the Eleventh Circuit explained:

> Here, the record does not support Holbrook's assertion that his *ante litem* notice alleging discrimination on the basis of his disability was a matter of public concern. The notice solely complains of Holbrook's personal grievance with respect to his alleged treatment by the City of Alpharetta; it does refer to any practice or course of conduct by the police department against disabled individuals beyond Holbrook and does not seek redress beyond improving Holbrook's personal employment situation. Although we recognize that a matter of concern to an individual employee may intersect, at times, with a matter of widespread public interest, a public employee may not transform a personal grievance into a matter of public concern by invoking a supposed popular interest in the way public institutions are run. We conclude that Holbrook's *ante litum* notice against the City of Alpharetta does not constitute speech protected by the First Amendment.

*Id*. at 1530 (citations and quotations omitted); *see also Braxton v. City of Newark*, No. 08-4218 (JLL), 2011 WL 4906822, at *11 (D.N.J. Oct. 13, 2011) ("The law does not support the contention that, every time an employee complains about her own personal disability, it becomes a matter of public concern."); *West v. New Mexico Taxation & Revenue Dept.*, 757 F. Supp. 2d 1065, 1127 (D.N.M. 2010) ("[Plaintiff's] complaints about the Defendants' responses to her requests for accommodations are not matters of public concern."); *Baldyga v. City of New Britain*, 554 F. Supp. 2d 268, 279 (D. Conn. 2008) ("[T]he CHRO complaint is entirely a litany of personal grievances addressing plaintiff's treatment as he recovered from Hepatitis C and attempted to return to work. Such a personally-focused complaint is not of public concern."); *Brady v. Dammer*, 573 F. Supp. 2d 712, 729 (N.D.N.Y. 2008) ("to the extent that Plaintiff premises her First Amendment claim on speech requesting reasonable accommodations, the claim fails because it is clear that those requests were explicitly made to protect or advance personal interests and do not constitute matters of public concern."); *Doherty v. Portland Cmty. Coll.*, No. CIV. 99-1375-ST, 2000 WL 1738862, at *18 (D. Or. Nov. 21, 2000) ("Merely because an employee's personal grievance involves complaints about disability discrimination does not convert it into a matter of public concern").

Although the issue of whether a plaintiff is engaged in speech involving a matter of public concern is a fact-specific inquiry that sometimes cannot be resolved until summary judgment, there is no question that dismissal at the motion to dismiss stage is appropriate where the allegations in the complaint itself demonstrate that the speech at issue was not a matter of public concern. In fact, in *City of San Diego v. Roe*, 543 U.S. 77, 84-85 (2004), the Supreme Court determined, at the motion to dismiss stage,

that an officer's speech did not touch on a matter of public concern. The instant case is also precisely one of those cases. The amended complaint contains all the details (including the October 14 letter itself) to make a determination at the motion to dismiss stage that the speech at issue is not a matter of public concern. *See, e.g.*, *Burns v. Cook*, 458 F. Supp. 2d 29, 39 (N.D.N.Y. 2006) ("To be sure, the question of whether speech relates to a matter of public concern is a question of law to be determined by the court; thus, consideration of such a question is proper under a Rule 12(b)(6) motion to dismiss."); *see also Berry v. Coleman*, 172 F. App'x 929 (11th Cir. 2006) (per curiam) (affirming the dismissal on Rule 12(b)(6) of First Amendment claim because plaintiff had not sufficiently alleged that his speech regarding circumstances at his employment was a matter of public concern); *Landstrom v. Illinois Dep't of Children and Family Servs.*, 892 F.2d 670, 678-79 (7th Cir. 1990) ("For this claim to survive District 220's motion to dismiss, plaintiffs must have adequately alleged statements which, among other things, touch upon a matter of public concern and thus implicate the first amendment." (quotations and citations omitted)).

In sum, because the allegations in the complaint do not involve a matter of public concern, plaintiff's First Amendment claim must be dismissed.

2. Plaintiff's Due Process Claims under the Fifth and Fourteenth Amendments

Defendants argue that plaintiff has failed to utilize his administrative remedy under Section 71 of the New York Civil Service Law and his judicial remedy under New York Civil Practice Laws and Rules Article 78, and therefore, cannot bring a Section 1983 claim for an alleged deprivation of property. As set forth below, the Court agrees that no Section 1983 due process claim can lie in this case as a matter of law because adequate post-deprivation procedural remedies exist under state law for all of the alleged procedural defects in plaintiff's termination process.[7]

a. Applicable Law

When a plaintiff brings a due process claim "[b]ased on random unauthorized acts by state employees . . . [t]he Due Process Clause of the Fourteenth Amendment is not violated when a state employee intentionally deprives an individual of property or liberty so long as the State provides a meaningful post [-] deprivation remedy." *Hellenic Am. Neighborhood Action Comm. v. City of New York*, 101 F.3d 877, 880 (2d Cir. 1996) (citing *Hudson v. Palmer*, 468 U.S. 517, 532, 531, 104 S.Ct. 3194, 3203, 82 L.Ed.2d 393 (1984); *Parratt v. Tay*lor, 451 U.S. 527, 541, 101 S.Ct. 1908, 1916, 68 L.Ed.2d 420

---

[7] Although plaintiff's counsel contended that this due process claim must survive even if Article 78 was available (but not used) because there is no exhaustion requirement under Section 1983, that contention conflates two different legal doctrines. The Court obviously recognizes that there is no exhaustion requirement to bring a Section 1983 claim. However, because one must show that the state procedural remedies are inadequate in order to bring a Section 1983 *due process* claim, the availability and non-use of such procedures would bar a Section 1983 claim. Thus, the legal defect in the due process claim is the failure to use available, post-deprivation remedies, rather than some general failure to exhaust. *See Marino v. Ameruso*, 837 F.2d 45, 47 (2d Cir. 1988) ("Although one need not exhaust state remedies before bringing a Section 1983 action claiming a violation of procedural due process, one must nevertheless prove as an element of that claim that state procedural remedies are inadequate. [Plaintiff] has made no such showing, and his failure to do so is fatal to his action.").

13

(1981), *overruled on other grounds by Daniels v. Williams*, 474 U.S. 327, 106 S.Ct. 662, 88 L.Ed.2d 662 (1986)).

b. Analysis

Plaintiff asserts a due process claim on the ground that he was wrongfully terminated under Section 71. Section 71 of the New York Civil Service Law "permits a civil service employer to terminate an employee who has been separated from service for more than one year by reason of disability resulting from an occupational injury." *Santiago v. Newburgh Enlarged City Sch. Dist.*, 434 F. Supp. 2d 193, 195 (S.D.N.Y. 2006). In *Santiago*, the court dismissed the due process claim by a former school district employee who claimed that she was wrongfully terminated under Section 71 based upon a disability resulting from an occupational injury. *Id*. at 198. In reaching that decision, the court emphasized that "[i]t is well settled that a civil service employee is not deprived of due process if the employee is terminated without a pre-termination hearing pursuant to Section 71 of the Civil Service Law." *Id.* (collecting cases). The court further explained that "[b]ecause the Civil Service Law gave plaintiff post-termination due process (i.e., the right to demand to return to work, and to contest any determination that she was not fit to return to work), the Fourteenth Amendment requirement is fully satisfied." *Id*.

This Court reaches the same holding in the instant case. Plaintiff clearly had the ability to challenge his Section 71 termination of his employment by initiating an Article 78 proceeding against the Town. *See, e.g.*, *Barthel v. Town of Huntington*, 97 A.D.3d 814, 949 N.Y.S.2d 112, 113 (N.Y. App. Div. 2012) (Article 78 proceeding brought by Director of Department of Human Services of the Town of Huntington challenging his termination from employment under Section 75 of the Civil Service Law). As the Second Circuit has emphasized, "[t]his court has held on numerous occasions that where, as here, a party sues the state and its officials and employees for the arbitrary and random deprivation of a property or liberty interest, an Article 78 proceeding is a perfectly adequate postdeprivation remedy." *Grillo v. New York City Transit Auth.*, 291 F.3d 231, 234 (2d Cir. 2002) (internal quotations and citation omitted). Moreover, the fact that any such proceeding may now be untimely does not alter the Court's analysis. *See Campo v. New York City Employees' Ret. Sys.*, 843 F.2d 96, 102 n.6 (2d Cir. 1988) ("[Plaintiff] may be barred by [the statute of] limitations from presently proceeding pursuant to Article 78. However, the fact that Article 78 may not now be available to [plaintiff] for that reason would not affect the result herein because [plaintiff] had available an Article 78 remedy whether she timely utilized it or not."); *Johnson v. Doe*, No. 00 CIV 3920 JSR KNF, 2001 WL 246370, at *3 (S.D.N.Y. March 12, 2001) ("Moreover, to the extent that plaintiff is alleging that [purported defendants] refused, wrongfully, to consider the medical documentation that is in the record, she has not stated a claim under federal law. It appears that any refusal to consider and be governed by the medical submissions made by the plaintiff was prompted by the failure of the submissions to comport with the requirements of the applicable New York statute. Plaintiff could have challenged the alleged failure to consider her medical documentation in an Article 78 proceeding in the New York State Supreme Court. However, the applicable four-month statute of limitations for commencing such a proceeding appears to have elapsed. The fact

that an Article 78 proceeding may no longer be an available option for plaintiff does not create a legitimate claim of due process violation.").

The procedures under Article 78 are more than adequate post-deprivation remedies for purposes of due process under the circumstances as alleged. Thus, any due process claim by plaintiff must fail as a matter of law. *See Grillo*, 291 F.3d at 234 (dismissing Section 1983 due process claim because "[plaintiff] has not provided an adequate explanation for his failure to avail himself of the name-clearing hearing offered by an Article 78 hearing"); *Marino*, 837 F.2d at 47 (affirming dismissal of Section 1983 claim due process claim challenging ALJ's evidentiary decision because, even assuming evidentiary error of a constitutional magnitude, an adequate state procedure existed to address any due process issue); *Monroe v. Schenectady Cnty.*, 1 F. Supp. 2d 168, 172 (N.D.N.Y. 1997), *aff'd* 152 F.3d 919 (2d Cir. 1998), ("It is well-established in this Circuit that a N.Y.C.P.L.R. Article 78 proceeding provides an adequate post-deprivation remedy where a plaintiff alleges he was coerced into surrendering an employment-based property or liberty interest. In the present case, plaintiff's property and liberty deprivations are premised upon the allegation that the Department coerced him into foregoing the arbitration hearing and accepting the demotion. These are precisely the type of matters addressed in Article 78 proceedings. Thus, the post-deprivation remedy provided by New York law is, in this instance, all the process that plaintiff was due." (citations omitted)); *see also Pabon v. New York City Transit Auth.*, 703 F. Supp. 2d 188, 199 (E.D.N.Y. 2010) ("This Court is persuaded that the constitutionally sufficient remedies available to rectify any technical or procedural errors in the Transit Authority's robust grievance process, including resort to an Article 78 appeal proceeding, preclude a due process claim here.").

To the extent plaintiff claims that the Town improperly terminated him under Section 71 and that he should have had the procedures under Section 75 of the New York Civil Service Law available to him, he again could have raised that argument in an Article 78 proceeding. In other words, plaintiff could have instituted an Article 78 proceeding in which plaintiff could have sought to overturn his termination because he was terminated under Section 71 rather than Section 75.[8] *See, e.g.*, *Hall v. Town of Henderson*, 17 A.D.2d 981, 794 N.Y.S.2d 231, 232 (N.Y. App. Div. 2005) (Article 78 proceeding in which town employee sought declaration that his termination under Section 71 violated due process because he was entitled to a written opportunity to be heard prior to termination under Section 75).[9] Because Article 78 was available to plaintiff to challenge his termination, whether under Section 71 or Section 75, no due process violation can be asserted as a

---

[8] At oral argument, plaintiff's counsel conceded that plaintiff could have brought an Article 78 proceeding, but that plaintiff did not have to "exhaust" his remedies in order to bring a Section 1983 due process claim. As noted *supra*, the Court agrees that Section 1983 does not require exhaustion. Instead, the Court holds that, although a plaintiff need not exhaust in order to bring a Section 1983 claim, the claim fails as a matter of law because of the due process available to him in state court via Article 78.

[9] It is also well-settled that "[t]he procedures set forth in Section 75, along with the availability of an Article 78 proceeding to challenge the outcome, meet the requirements of the Due Process Clause." *Leary v. Civil Service Employees Assoc.*, No. 11-CV-716 (CS), 2012 WL 1622611, at *8 (S.D.N.Y. May 9, 2012).

15

matter of law. Accordingly, the due process claims under Section 1983 must be dismissed.

3. Plaintiff's Equal Protection Claim

Defendants argue that plaintiff's equal protection claim is barred because a disability is not a protected classification under the Equal Protection Clause, plaintiff cannot assert a "class of one" claim, and the Equal Protection Clause does not mandate the provision of a reasonable accommodation. Plaintiff argues that he is a member of a class of disabled Town employees and a class of disabled employees who were injured on the job, and defendants' failure to provide plaintiff with a reasonable accommodation was in violation of the Equal Protection Clause. (Pl.'s Br. at 20.) As set forth below, plaintiff's Equal Protection claim must be dismissed as a matter of law.[10]

Failure to provide a reasonable accommodation cannot form the basis of an Equal Protection claim. *See Bd. of Trustees of Univ. of Ala. v. Garrett*, 531 U.S. 356, 368 (2001) ("If special accommodations for the disabled are to be required, they have to come from positive law and not through the Equal Protection Clause."); *Negron v. City of N.Y.*, No. 10 CV 2757(RMM)(KB), 2011 WL 4737068, at *16 (E.D.N.Y. Sept. 14, 2011) ("to the extent that plaintiff alleges that defendants discriminated against her on the basis of her disability by not providing her with a workplace accommodation for her injured left hand, plaintiff's claim fails because the Equal Protection Clause does not require accommodations for the disabled."). The Court also notes that the Equal Protection Clause does not apply to public employees asserting a "class of one" theory. *See Enquist v. Or. Dep't. of Agric.*, 553 U.S. 591, 128 S.Ct. 2146, 2155-57 (2008) (deciding that "the class-of-one theory of equal protection has no application in the public employment context").

Based upon the pleadings and attached documents, it is evident that plaintiff asserts only a "class of one" claim. As discussed *supra*, plaintiff argues that other disabled employees received accommodations and that he was singled out. Plaintiff argues, in his opposition, "[t]he Complaint also specifies facts underlying an Equal Protection violation based upon 'arbitrary

---

[10] As an initial matter, the Court agrees with defendants that disability and/or perceived disability are not suspect or quasi-suspect classifications. *See Bd. of Trustees of Univ. of Ala. v. Garrett*, 531 U.S. 356, 366-67 (2001); *Bolmer v. Oliveira*, 594 F.3d 134, 146 (2d Cir. 2010) ("the Equal Protection Clause only proscribes disparate treatment of the disabled that is not rationally related to a legitimate government purpose . . . ."); *Gallagher v. Town of Fairfield*, No. 3:10-cv-1270(CFD), 2011 WL 3563160, at *4 (D. Conn. Aug. 15, 2011) ("'[D]isability" is not a protected class under the Equal Protection Clause of the Fourteenth Amendment."); *Kaiser v. Highland Cent. Sch. Dist.*, 2008 WL 5157450, at * (N.D.N.Y. Dec. 8, 2008) ("Disability and/or perceived disability are not suspect or quasi-suspect classifications."). Thus, if plaintiff properly alleged a class-based equal protection claim, it would be subject to rational basis review. *See Graham v. Watertown City Sch. Dist.*, No. 7:10-CV-756, 2011 U.S. Dist. LEXIS 38398, at *13-14 (N.D.N.Y. Apr. 8, 2011). As set forth *infra*, however, plaintiff's claim is a "class of one" equal protection claim or a claim based upon a denial of a request for a reasonable accommodation. No class-

based equal protection claim is asserted in the amended complaint. In any event, even if plaintiff was attempting to assert a class-based equal protection claim, it could not survive a motion to dismiss because any claim of class-based discrimination in plaintiff's complaint is wholly conclusory and, more importantly, is completely inconsistent with plaintiff's allegations and October 14 letter, which make clear that plaintiff is alleging that other disabled employees received reasonable accommodations while he did not.

and irrational discrimination.' It also alleges selective treatment in terms of public employment, and that such treatment was motivated by an intention to discriminate based upon impermissible considerations, such as a malicious or bad faith intent to injure the person." (Pl.'s Opp. Br. at 20 (citation omitted)). As plaintiff's claim is clearly a class of one claim, *see Price v. City of New York*, 264 F. App'x 66, 68 (2d Cir. 2008) ("To prevail on a 'class of one' selective treatment claim without asserting membership in a protected class, [plaintiff] must demonstrate, *inter alia*, that the defendants *intentionally* treated him differently from others similarly situated without any rational basis"), the claim is barred as a matter of law by *Enquist*.

In any event, even if plaintiff's Equal Protection claim could be construed more generally as based upon defendants' failure to provide him with a reasonable accommodation, (*See* Pl.'s Opp. Br. at 20 (arguing that plaintiff's purported class and sub-class "were purposefully discriminated against by policies which restrict or prohibit these employees from obtaining their statutory right to reasonable accommodation")), that claim also fails as a matter of law. Specifically, as an Equal Protection claim based upon denial of a reasonable accommodation is barred by the Supreme Court decision in *Garrett*, plaintiff's Equal Protection claim must be dismissed.

\* \* \*

In sum, all of plaintiff's constitutional claims pursuant to Sections 1983 and 1988 must be dismissed.[11]

## C. State Law Claims

Having granted defendants' motion to dismiss with respect to plaintiff's federal claims, the only remaining claims are the plaintiff's state law claims. However, having determined that plaintiff's federal claims against the defendants do not survive the defendant's motion to dismiss, the Court concludes that retaining jurisdiction over any of the remaining state law claims is unwarranted. 28 U.S.C. § 1367(c)(3); *United Mine Workers of Am. v. Gibbs*, 383 U.S. 715, 726, 86 S.Ct. 1130, 16 L.Ed.2d 218 (1966). "In the interest of comity, the Second Circuit instructs that 'absent exceptional circumstances,' where federal claims can be disposed of pursuant to Rule 12(b)(6) or summary judgment grounds, courts should 'abstain from exercising pendent jurisdiction.'" *Birch v. Pioneer Credit Recovery, Inc.*, No. 06-CV-6497T, 2007 WL 1703914, at \*5 (W.D.N.Y. June 8, 2007) (quoting *Walker v. Time Life Films, Inc.*, 784 F.2d 44, 53 (2d Cir. 1986)). Therefore, in the instant case, the Court, in its discretion, "'decline[s] to exercise supplemental jurisdiction'" over plaintiff's

---

[11] Defendants also move to dismiss plaintiff's constitutional claims, in the alternative, on the ground that plaintiff has failed to allege personal involvement with respect to the individual defendants. (Defs.' Br. at 12-13.) The Court agrees. "[A] complaint that fails to allege how a specific defendant violated the law or injured the plaintiff should be dismissed as to that defendant." *Walker v. Clemson*, No. 11 Civ. 9623(RJS)(JLC), 2012 WL 2335865, at \*7 (S.D.N.Y. June 20, 2012). Plaintiff's complaint is utterly devoid of any allegation of personal involvement in the alleged constitutional deprivations by any individual defendant. Plaintiff's allegation that the individual defendants received his notice of claim and failed to act is insufficient to allege personal involvement because it does not relate to the alleged constitutional violations. Defendants also assert that the individual defendants are entitled to qualified immunity. (Defs.' Br. at 13-14.) However, in light of the dismissal of plaintiff's federal claims on other grounds, the Court declines to address this argument.

17

state law claims because "it 'has dismissed all claims over which it has original jurisdiction.'" *Kolari v. N.Y.-Presbyterian Hosp.*, 455 F.3d 118, 122 (2d Cir. 2006) (quoting 28 U.S.C. § 1367(c)(3)); s*ee also Cave v. E. Meadow Union Free Sch. Dist.*, 514 F.3d 240, 250 (2d Cir. 2008) ("We have already found that the district court lacks subject matter jurisdiction over appellants' federal claims. It would thus be clearly inappropriate for the district court to retain jurisdiction over the state law claims when there is no basis for supplemental jurisdiction."); *Karmel v. Claiborne, Inc.*, No. 99 Civ. 3608 (WK), 2002 WL 1561126, at *4 (S.D.N.Y. July 15, 2002) ("Where a court is reluctant to exercise supplemental jurisdiction because of one of the reasons put forth by § 1367(c), or when the interests of judicial economy, convenience, comity and fairness to litigants are not violated by refusing to entertain matters of state law, it should decline supplemental jurisdiction and allow the plaintiff to decide whether or not to pursue the matter in state court."). The Court, in its discretion, concludes that the interests of efficiency and judicial economy are not sufficient in this case to warrant exercising supplemental jurisdiction over the state law claims. Accordingly, pursuant to 28 U.S.C. § 1367(c)(3), the Court declines to retain jurisdiction over the remaining state law claims given the absence of any federal claim that survives the summary judgment motion and dismisses any such claims without prejudice.

## IV. LEAVE TO RE-PLEAD

Although plaintiff has not requested leave to re-plead his amended complaint, the Court has considered whether plaintiff should be given an opportunity to re-plead his federal claims. Under Rule 15(a) of the Federal Rules of Civil Procedure, the "court should freely give leave [to amend] when justice so requires." Fed. R. Civ. P. 15(a)(2). However, even under this liberal standard, this Court finds that any attempt to amend the pleading in this case would be futile. *See Cuoco v. Moritsugu*, 222 F.3d 99, 112 (2d Cir. 2000) ("The problem with [plaintiff's] causes of action is substantive; better pleading will not cure it. Repleading would thus be futile. Such a futile request to replead should be denied."). As discussed in detail *supra,* it is clear from the amended complaint that plaintiff does not have any possibility of asserting plausible federal claims because dismissal is not based upon pleading deficiencies, but rather legal doctrines (such as untimeliness under the ADA) that cannot be remedied by any amendments. Thus, where any amendment to the complaint would clearly be futile, dismissal without leave to re-plead is appropriate. *See, e.g.*, *Peterec-Tolino v. New York*, 364 F. App'x 708, 711 (2d Cir. 2010) (affirming district court's *sua sponte* dismissal of § 1983 claims without leave to amend because, *inter alia,* certain defendants were not state actors and "[a]ny amendment would be futile"); *Wilson v. Wilson-Poison*, No. 09 Civ. 9810(PGG), 2010 WL 3733935, at *10 (S.D.N.Y. Sept. 23, 2010) (leave to amend unwarranted because, *inter alia,* plaintiff could not allege state action under Section 1983).

In addition, plaintiff has not requested an opportunity to re-plead, and has failed to explain how any amendment could possibly state a plausible legal claim. Thus, the Court declines to grant leave to re-plead. *See, e.g.*, *Ackerman v. Doyle*, 43 F. Supp. 2d 265, 275 (E.D.N.Y. 1999) ("[T]he Court is unable to discern a viable cause of action from the complaint, and the plaintiff did not request leave to replead. The Court declines to *sua sponte* afford the plaintiff leave to amend on

the ground of futility. In the Court's view, granting leave to amend would be unproductive and dismissal with prejudice is appropriate.").

Finally, plaintiff has been given ample opportunity to allege a claim and has failed to do so. In response to the defendants' pre-motion letter requesting leave to file a motion to dismiss, plaintiff requested leave to amend. However, plaintiff's amended complaint is still defective. Under these circumstances, the Court declines to grant plaintiff yet another opportunity to re-plead. *See De Jesus v. Sears, Roebuck & Co.*, 87 F.3d 65, 72 (2d Cir. 1996) (noting that the Second Circuit has "upheld decisions to dismiss a complaint without leave to replead when a party has been given ample prior opportunity to allege a claim" (citing *Armstrong v. McAlpin*, 699 F.2d 79, 93-94 (2d Cir. 1983) ("Because the complaint whose allegations were being considered by the district court was plaintiffs' second amended complaint, the district court did not abuse its discretion in refusing to give plaintiffs a fourth attempt to plead."))).

V. CONCLUSION

For the foregoing reasons, the Court grants defendants' motion to dismiss plaintiff's federal claims in their entirety. The Court declines to exercise supplemental jurisdiction over plaintiff's state law claims and these claims are dismissed without prejudice. The Clerk of the Court shall enter judgment accordingly and close the case.

SO ORDERED.

_____

JOSEPH F. BIANCO
United States District Judge

Dated: September 5, 2012
   Central Islip, New York

\*   \*   \*

Plaintiff is represented by Howard E. Gilbert, Law Offices of Howard E. Gilbert, 532 Broadhollow Road, Suite 107, Melville, NY 11747. Defendants Town of Huntington, Frank P. Petrone, Mark Cutherbertson, Susan A. Berland, Mark Mayoka, Glenda A. Jackson are represented by James P. Clark, Law Offices of James P. Clark, P.C., 256 Main Street, Suite 202, Northport, NY 11768. Defendants Town of Huntington Highway Department and William Naughton are represented by John J. Leo, Town of Huntington, 100 Main Street, Huntington, NY 11743.